LAMB v. CARLEY.

(Supreme Court, Appellate Division, First Department. December 9, 1898.)

1. GUARANTY—CONTRACT.
    In answer to a letter that plaintiff intended to remit a sum of money to a corporation of which defendant was president, for investment, defend- ant wrote plaintiff that if the remittance was made he would guaranty him against loss for a given period, and that the details would be stated more definitely when the money was sent. *Held* a mere proposal of a guaranty to be thereafter made, and not a completed contract.

2. SAME—RELEASE OF GUARANTOR.
    Where one remitted money for investment in consideration of a third person guarantying him against losses, and then withdrew the larger part of it with the guarantor's consent, under an agreement by which he was to replace it within a specified time, which he failed to do, no recovery could be had on the guaranty; and this, even though the invest- ment was not for a definite time.

Appeal from trial term, New York county.

Action by Thyele M. Lamb against Francis D. Carley. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

James M. Hunt, for appellant.

A. Leo Everett, for respondent.

INGRAHAM, J. The action was brought to enforce an agreement to guaranty the plaintiff against loss upon certain stock speculations. The complaint alleged that the plaintiff was solicited by the defendant to remit money to the Monetary Trust, a corporation of which the defendant was the president, for investment, and the defendant undertook that, if the plaintiff would do so, he would guaranty him against loss on the account until the Monetary Trust had made up a good sum in his (the plaintiff's) favor. The agreement to guaranty was sought to be proved by correspondence. The first letter was written by the plaintiff to the defendant, dated January 6, 1896, in which the plaintiff states: "I may decide to invest from three to five thousand dollars more under your advice, but may not be in a position to do so for a month yet." In answer to this letter, on the 8th of January, the defendant writes to the plaintiff, and, after regretting certain unfortunate speculations of the plaintiff, says: "As a rule those customers who have lost have shown good spirit, but no one probably equal to yours. I intend to make this a personal matter between you and myself, my dear Mr. Lamb, and if you will as soon as possible make a remittance, such as you intimate, I will guaranty you against loss on that account for a given period, until we have made up a good sum in your favor. I will go into details more definitely when you send the money." Subsequently the plaintiff made remittances to the defendant aggregating about $3,000. The last remittance was inclosed in a letter which contained the following statement: "After losses I sustained in the recent slump, I should be very timid of investing further in the street, but am resting easy under your skillful management and kind offer of indemnity against loss." There was no further agreement as to the terms of the guaranty, the period for which it was to continue, or any of the details which the defendant stated he would definitely fix on the remittance of the money.

We do not think that there was here such a definite agreement as could be enforced. The plaintiff had stated to the defendant that he intended to make a remittance for the purpose of further speculation, some time in the future; and, in answer to that, the defendant had stated that if he made such remittance the defendant would guaranty the plaintiff against loss. The details of the guaranty, including the period for which it should continue, and the speculation to be conducted, were to be definitely settled when the money was sent. Here was a clear intimation that the proposal was to be subject to subsequent arrangements as to the details

of the agreement. What was proposed was not at the time a definite agreement, but a proposal for a subsequent agreement to be made between the parties.

Assuming, however, that there was such an agreement as could be enforced, we think that the plaintiff failed to keep his part of the contract, thereby relieving the defendant from any obligation to pay the plaintiff the loss sustained. The plaintiff had proposed to remit from three to five thousand dollars, to be invested under the defendant's advice. The defendant replied that, if the plaintiff would make as soon as possible such remittance, he would guaranty him against loss for a given period, which was not fixed, but which evidently was to be subsequently fixed between the parties. Acting upon this, the plaintiff alleges that he had remitted about $3,000 to the defendant, or to the Monetary Trust, of which the defendant was the president. But, to make this guaranty obligatory, it is quite apparent that such remittance, when made, must be continued in the speculation or investment until a result is realized. If the plaintiff, having made the remittance, shortly afterwards withdraws it, before the closing out of the investment or speculation, it is quite apparent that the condition upon which the guaranty was given had not been fulfilled by the plaintiff, and any loss which resulted would not be one within the contemplation of the parties at the time that the agreement was made. It was the investment of the $3,000, and the use of that sum of money in the investment, that was to produce the result hoped to be arrived at; and it was any loss under such investment, in which the sum of $3,000 to $5,000 was to be invested by the plaintiff, that the defendant agreed to guaranty. It seems that prior to May 25th there had been purchased for the plaintiff 200 shares of St. Paul Railroad stock and 2,000 bushels of wheat, which the Monetary Trust was carrying for him; that early in March the plaintiff had drawn $400 of the $3,000 that had been remitted; and that on May 26th he wrote to the defendant stating that he would require the sum of $1,500 on account that week for a short time. The defendant in reply requested to know how long it would be necessary to keep that money out; to which the plaintiff, on May 30th, replied that he would require the money at least two weeks. In response to this, on June 2d, $1,500 of the amount deposited by the plaintiff with the Monetary Trust was returned to the plaintiff by that corporation. On June 13th, evidently in reply to a letter inquiring about the return of the $1,500, the plaintiff wrote to the defendant that he would require the money for a week longer. And again, on July 20, 1896, the plaintiff replied to another message from the defendant that he could not send any money for several days. On June 22d the plaintiff drew another $100 from the Monetary Trust, making a total withdrawal of $2,000 of the $3,000 deposited by him. No part of this money was ever returned. Several demands were made for the return of the $2,000. On September 4th the defendant wrote to the plaintiff: "We cannot take the risk of a reaction in the market without something to work on, and you must make us immediate remittance. We have waited longer than we

ought to have done, as you are aware." Again, on October 20th, demands were made upon the plaintiff to remit this money he had drawn out; and, he having failed to do so, on October 30th the Monetary Trust sold the securities it was carrying for the plaintiff, which resulted in the loss of the balance of the $3,000 remaining in the hands of that corporation. There was here a direct violation by the plaintiff of the conditions upon which the guaranty depended; which was that the plaintiff remit to the Monetary Trust from $3,000 to $5,000, to be invested under the defendant's advice. It is true that such remittance of $3,000 was made and the investment was made; but shortly afterwards, two-thirds of this remittance having been withdrawn upon the statement that it was to be returned in two weeks, the clearly expressed understanding, that this remittance was to remain with the Monetary Trust to be used under direction of the defendant in this investment or speculation, was violated. Assuming that the plaintiff might have insisted, in the absence of any definite time being fixed, that the speculation should be closed out and the money returned to him by the defendant, when a reasonable time in which to conduct the speculation had elapsed, he did not do this. He obtained a portion of the money remitted upon the understanding that it was to be returned in a short time. That understanding he did not keep. There is no evidence to show that at the time that the money was returned to him any loss had been sustained; and, to entitle him to hold the defendant upon this guaranty, it is clear that he was required to leave the amount of the remittance under the control of the defendant until the speculation had been terminated. We think, therefore, upon the conceded facts, the condition upon which the guaranty became operative was violated by the plaintiff, and that he was not entitled to recover.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

RUMSEY, J. I concur on the first ground stated in the opinion. If the contract was valid and the parties entered upon its performance by the remittance of $3,000, a subsequent withdrawal of that sum by plaintiff might furnish ground for a defense if the withdrawal was injurious to the defendant, but surely it would not avoid a contract then existing.